RICHARD MATTSON, Plaintiff-Appellant, v. CHRONICLE PUBLISHING COMPANY, f/d/b/a Evergreen Communications, Inc., d/b/a The Daily Pantagraph, *et al.*, Defendants-Appellees.

Fourth District   No. 4—86—0709

Opinion filed June 8, 1987.

Fint, Wright & Associates, Ltd., of Bloomington, for appellant.

James A. Klenk and Alan J. Mandel, both of Isham, Lincoln & Beale, of Chicago, and Thomas N. Jacob, of Thomas N. Jacob & Associates, of Bloomington, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On March 29, 1984, plaintiff, Richard Mattson, brought suit for defamation in the circuit court of McLean County against defendants, Chronicle Publishing Company, d/b/a The Daily Pantagraph (Pantagraph), and its reporter, Tom Long. On October 1, 1986, on motion of defendants, the court entered a summary judgment in favor of defendants. Plaintiff appeals. We affirm.

The suit was based on an article published by the Pantagraph on March 29, 1983. The article stated:

"In another employee-theft case disposed of yesterday, McLean County State's Attorney's Office dropped a charge against a 32-year-old El Paso man who was arrested in 1981 for stealing food from Brokow Hospital.

The hospital requested that the case be dropped against Dennis Shoemaker, 575 West Jefferson St.

Shoemaker and a fellow maintenance worker at the hospital were caught in the act of trying to take about $380.00 worth of food from the hospital kitchen the night of September 30th, 1981.

Shoemaker is no longer employed by the hospital."

Defendants seek to support the summary judgment on the bases that the record before the trial court conclusively showed that: (1) the article was privileged as an "accurate and complete or a fair abridgement of the occurrence" as set forth in the official record of a judicial proceeding (Restatement (Second) of Torts sec. 611 (1977)); (2) the article was not "of and concerning plaintiff"; and (3) because of plaintiff's past criminal record, he could not be libeled. In regard to defendants' second point, we note that plaintiff was not shown to have been otherwise mentioned in a Pantagraph article that would indicate he was the fellow maintenance worker with Shoemaker at the time of the occurrence reported, with two exceptions: A news article on October 2, <u>1981</u>, reported plaintiff and Shoemaker being arrested at the time of

the occurrence described in the allegedly defamatory article, and on January 26, 1982, the Pantagraph published an article reporting that plaintiff had been acquitted of the charges of theft. However, the trial court's judgment was apparently based entirely upon the first issue of privilege. We agree that issue is dispositive and do not deem it necessary to discuss the other issue.

According to the undisputed evidence, plaintiff and Shoemaker had both been charged in the circuit court of McLean County with theft. On March 28, 1983, charges against Shoemaker were dropped. On that day, Long, who covered courthouse news for the Pantagraph, went to the McLean County courthouse and examined the court file in the case against Shoemaker and read all of the documents in that file. Included in that file was a grand jury transcript which contained testimony that Mattson and Shoemaker had been caught in the hospital kitchen without authorization and in the midst of an attempted theft of food. A witness had described Shoemaker as crouching under a table of steam kettles and plaintiff hiding with a shirt over his head and running off as soon as somebody attempted to talk to him. Long also saw in the file a police report which stated that Shoemaker and plaintiff had been "caught in the act" of stealing food. Long did not seek further information as to what had happened in the case against plaintiff. No evidence was presented that he knew plaintiff had been acquitted.

█ Section 611 of the Restatement (Second) of Torts indicates:

> "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." (Restatement (Second) of Torts sec. 611 (1977).)

The supreme court has adopted the Restatement in *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 419 N.E.2d 350. In *Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill. 2d 112, 115, 214 N.E.2d 746, 748, the court stated a report of judicial proceedings is conditionally privileged so long as it is "accurate and complete or a fair abridgment of such proceedings." The court further stated in *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 243 N.E.2d 217, that the conditional privilege will not be deemed to have been abused if the report is inaccurate and the publisher reasonably believed the defamatory matter to be true. See also *Bannach v. Field Enterprises, Inc.* (1972), 5 Ill. App. 3d 692, 284 N.E.2d 31.

The United States Supreme Court stated that, in situations involving private individuals as well as public figures, in order to recover

damages resulting from a newspaper publication of an inaccurate and defamatory report, the plaintiff must prove that the publisher "entertained serious doubts as to the truth of his publication." (*Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 56, 29 L. Ed. 2d 296, 319, 91 S. Ct. 1811, 1826.) That court stated that the respondent relied on information supplied by police officials in making its report.

■ In *O'Donnell v. Field Enterprises, Inc.* (1986), 145 Ill. App. 3d 1032, 491 N.E.2d 1212, the court noted that, while the privilege is not absolute, it is broader in scope than the qualified or conditional privileges that are a part of the law of libel. The court noted that the privilege exists even though the publisher does not believe that the defamatory statements from the proceedings are true and even though the publisher knows they are false. (*O'Donnell v. Field Enterprises, Inc.* (1986), 145 Ill. App. 3d 1032, 1035-36, 491 N.E.2d 1212, 1215.) The court stated further that, in order to be protected from liability, where the news media account is not a complete report of the proceedings, it must be a "fair abridgement" of the proceedings. Finally, the court noted that to determine whether the newspaper articles are a fair abridgement of the proceedings, the reports are read together to determine if the "gist or sting" conveyed by the official report "is the same as the gist or sting of the defamation that is conveyed from the newspaper articles." *O'Donnell v. Field Enterprises, Inc.* (1986), 145 Ill. App. 3d 1032, 1038, 491 N.E.2d 1212, 1216.

■ The testimony of the grand jury witnesses which Long viewed indicated that Shoemaker and plaintiff had been arrested at the scene of a theft under circumstances that strongly indicated their guilt even though they were not shown to have had the stolen goods in their possession at the time of their apprehension. No inference is created that Long entertained any serious doubts of the truth of what he wrote. A police report in the file described the incident as a catching of Shoemaker and plaintiff "in the act." Although a more accurate description of what the record showed was that plaintiff and Shoemaker were apprehended under very incriminating circumstances, a statement that they were "caught in the act" was a fair abridgement of the record and did not have a substantially different "gist" or greater "sting."

The circuit court properly determined that the questioned article was shown, as a matter of law, to be privileged. Summary judgment was properly granted. We affirm that judgment.

Affirmed.

SPITZ, P.J., and LUND, J., concur.